FILED

2013 Nov-21  AM 11:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | | |
|---|---|---|
| **GINGER MICHELLE BROTHERS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **CV-12-BE-2212-E** |
| **BOJANGLES' RESTAURANTS, INC.,** | ] | |
| **and CASSANDRA LEWIS** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |
| | ] | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on "Defendant's Motion for Summary Judgment" (doc. 27), filed by Bojangles' Restaurants, Inc.  The court entered an "Order to Show Cause and Stay of Discovery" (doc. 31), and the Plaintiff filed an opposition to the motion (doc. 32).  For the reasons stated in this Memorandum Opinion, the court FINDS that the motion is due to be GRANTED as to the claims for monetary relief but DENIED as to the claims for injunctive, declaratory, or other non-monetary relief.

## <u>FACTS</u>

On November 18, 2010, the Defendant, Bojangles Restaurants, Inc., hired the Plaintiff, Ginger Brothers.  She alleges that during her ten-and-a-half month tenure with Bojangles, she was subjected to sexual harassment and a sexually hostile work environment in violation of Title VII; retaliation in violation of Title VII  for complaining of sexual harassment; the tort of outrage in violation of Alabama law; and race discrimination in violation of Title VII and Section 1981.

1

(Amend. Compl. Doc. 16).  Brothers also states in her opposition brief that she asserts claims of negligence and wantonness, although her Amended Complaint does not include counts with these allegations.

On June 7, 2011, Brothers filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama.  The petition that she filled out marked an X under "NONE" next to the following category of SCHEDULE B - PERSONAL PROPERTY: "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."  (Doc. 28-1, at 11, ¶ 21).  When she filed her petition on June 7, 2011, Brothers signed a "**DECLARATION CONCERNING DEBTOR'S SCHEDULES"** with a subtitle of "DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR," stating "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 18 sheets, and that they are true and correct to the best of my knowledge, information, and belief."  (Doc. 28-1, at 25).

On September 9, 2011, Judge Robinson entered a Confirmation Order on Brothers's proposed Chapter 13 Plan.

On October 8, 2011, four months after Brothers filed her Bankruptcy petition, Bojangles terminated Brothers.  On October 24, 2011, she filed a Charge of Discrimination against Bojangles with the EEOC, complaining of a hostile work environment based on sex, retaliation based on complaints of sexual harassment, and race discrimination. Some of the harassment and retaliatory acts listed in the Charge occurred in the summer of 2011, before the Confirmation Order.

On June 19, 2012, Brothers filed the instant suit against Bojangles.  Before Bojangles

2

filed the current motion for summary judgment, Brothers did not amend her bankruptcy petition to add her lawsuit as a contingent claim, or otherwise advise the Bankruptcy Court of her pending lawsuit.  On August 3, 2012, Bojangles filed an Answer to the Complaint asserting the defense of estoppel.

On September 13, 2013, Bojangles filed this motion for summary judgment, requesting that this court enter judgment in its favor based on judicial estoppel.  Two weeks later, on September 30, 2013, Brothers amended her bankruptcy petition to add this lawsuit as a contingent claim, and on the next day, October 1, 2013, she filed her opposition to Bojangles's motion for summary judgment.

Brothers's Chapter 13 Bankruptcy proceeding remains pending; the current year is the second of a five-year plan.  The Bankruptcy court garnished Brothers's paycheck at Bojangles.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering

evidence showing no dispute of material fact or by showing that the non-moving party's evidence

fails to prove an essential element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats &

Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   Substantive law determines which facts are

material and which are irrelevant.  *Id*. at 248.  In responding to a motion for summary judgment,

the non-moving party "must do more than simply show that there is some metaphysical doubt as

to the material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).

In reviewing the evidence submitted, the court must "view the evidence presented

through the prism of the substantive evidentiary burden," to determine whether the nonmoving

party presented sufficient evidence on which a jury could reasonably find for the nonmoving

party.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir.

1988).  The court must refrain from weighing the evidence and making credibility

determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S.

at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v.

State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  Furthermore, all evidence and

inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282.  The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

Even if a district court "'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (*quoting Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)).  The court should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

## DISCUSSION

Brothers is a party to two separate federal judicial proceedings: a Chapter 13 Bankruptcy case and a civil lawsuit.  In its motion for summary judgment, Bojangles  focuses on the interplay between the two, arguing that the doctrine of judicial estoppel prevents Brothers from pursuing the civil suit that she failed to disclose in the bankruptcy proceeding.  Brothers responds that the civil claims against Bojangles arose after she filed the Bankruptcy schedules of assets and adds the self-serving statement that she is a layperson and "did not realize that a lawsuit is a potential asset as defined by the Bankruptcy Court."  (Pl.'s Br., doc 32, at 5).

5

The doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001).  Put another way, the doctrine ensures that "a party [cannot assert] a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 Moore's Federal Practice § 134.30, at 134-62 (3d ed. 2000). It "'is an equitable doctrine invoked by a court at its discretion.'"  *New Hampshire,* 532 U.S. at 1815 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

The Supreme Court has explained that although the circumstances surrounding the invocation of judicial estoppel may vary and that no "exhaustive formula" for applying the doctrine exists,

> several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire,* 532 U.S. at 750-51 (internal quotations and citations omitted).

Applying the doctrine in light of the Supreme Court's guidance, the Eleventh Circuit listed two "primary factors" for parties to establish when invoking the doctrine: "'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'" *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269, 1273 (11th Cir. 2010) (quoting

6

*Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir. 2002)).

In determining whether the doctrine of judicial estoppel applies to the instant case, the court will first determine whether Bojangles has established the two primary factors that the Eleventh Circuit identified.

<u>Inconsistent Positions</u>

Bojangles argues that Brothers took inconsistent positions in judicial proceedings because she filed this lawsuit, which represents a contingent or unliquidated claim, but her Bankruptcy petition states that she has no contingent or unliquidated claims as assets.  Brothers argues that at the time she filed her Bankruptcy petition, she had not yet filed this lawsuit, and thus, no inconsistency exists.

The facts show that Brothers did indeed file her EEOC charge and this lawsuit *after* she filed her Bankruptcy petition, which she signed under penalty of perjury.  Thus, Brothers took an inconsistent position under oath *only if* she has a continuing duty to disclose changes in her bankruptcy asset schedule.

Brothers acknowledges well-settled Eleventh Circuit law holding that debtors have a continuing duty to disclose such changes; for example, the recent *Robinson v. Tyson Foods* decision states that "the duty to disclose is a continuing one that does not end once the forms are submitted to the Bankruptcy Court; rather, the debtor must amend his financial statements if circumstances change."  (Pl.'s Opp. Br., doc. 32, at 4 (quoting *Robinson,* 595 F.3d at 1274)).

In *Robinson,* the plaintiff had filed a workers comp claim that she failed to disclose in the bankruptcy petition, and she also filed a discrimination suit against her employer *after* filing the bankruptcy petition.  This subsequent discrimination suit – not the workers compensation case –

was the proceeding that the movant requested be barred through the doctrine of judicial estoppel.

The district court granted the employer's motion for summary judgment in the discrimination

case, holding that the doctrine of judicial estoppel barred that action.  On appeal, the Eleventh

Circuit affirmed that ruling, holding that, because of the continuing duty to disclose, the Chapter

13 debtor had a statutory duty to amend her financial schedule to disclose the subsequently filed

discrimination suit as an contingent asset, and her failure to do so resulted in the plaintiff's taking

inconsistent positions under oath in the two proceedings.

Applying *Robinson*'s ruling to the instant case, the court holds that Brothers had a

*continuing* statutory duty to disclose assets in the Bankruptcy case.   "This duty applies to

proceedings under Chapter 13 and Chapter 7 alike because 'any distinction between the types of

bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel

because the need for complete and honest disclosure exists in all types of bankruptcies.'"

*Robinson,* 595 F.3d at 1274 (quoting *De Leon v. Comcar Indus., Inc.,* 321 F.3d 1289, 1291 (11th

Cir. 2003)).  Further, "a pending lawsuit seeking monetary compensation qualifies as an asset."

*Id.*  The "property of the bankruptcy estate includes all *potential* causes of action that exist at the

time petitioner files for bankruptcy."  *Barger v. City of Cartersville,* 348 F.3d 1289, 1292 (11th

Cir. 2003) (citing 11 U.S.C. § 541(a) (emphasis supplied)).  Accordingly, some unpublished

cases of the Eleventh Circuit and district courts sitting in the Eleventh Circuit have stated that the

plaintiff was required to disclose EEOC charges in Bankruptcy Court financial schedules because

those would fall within "other contingent and unliquidated claims."   *See, e.g.,  Casanova v.

PreSolutions, Inc.,* 228 Fed. Appx 837, at *2 (11th Cir. 2007); *Hands v. Winn-Dixie Stores, Inc.,*

2010 WL 4496798, at *4-5 (S. D. Ala. Nov. 1, 2010).

Therefore, this court holds that Brothers's failure fulfill her statutory duty to amend her financial schedule of assets to reflect her discrimination claims means that she did indeed take inconsistent positions under oath.  In the Bankruptcy proceeding, she took the position under oath that from June 7, 2011 until September 30, 2013 she had no contingent claims.  In the EEOC Charge, filed in October of 2011, and in the present lawsuit, filed in June of 2012, she asserts the inconsistent position that she has a claim for monetary damages against Bojangles for various wrongs, including discrimination claims.  At the very latest, when Brothers filed her discrimination suit in June of 2012, and the Bankruptcy case was still pending, the claim vested in the Bankruptcy estate and she had a duty to provide notice of the suit to all creditors.  *See* 11 U.S.C. § 1303; *see also Robinson,* 595 F.3d at 1274-75.   Thus, she took and maintained inconsistent positions in the two different judicial proceedings for at least 15 months, until the motion for summary judgment exposed that inconsistency.

Brothers argues, however, that the instant case is distinguishable from the *Robinson* case upon which Bojangles relies so heavily, because the plaintiff in that case had a workers comp claim existing *prior to* the bankruptcy filing but not disclosed in the bankruptcy petition.  While that fact is true, her argument ignores *Robinson's* primary focus on a second case:  the subsequently-filed employment discrimination suit; the subsequently-filed discrimination suit and *not* the previously-filed workers comp suit was the proceeding to which the court applied the doctrine of judicial estoppel.  Thus, to the extent that Brothers attempts to distinguish *Robinson* by asserting that, in *Robinson,* the case barred by judicial estoppel existed before the filing of the bankruptcy petition, that assertion is wrong and does not provide a true distinction.

Brothers further argues that, even if the positions were inconsistent for a period of time,

9

she has timely rectified that inconsistency by amending her Bankruptcy petition's schedule of
assets to disclose her lawsuit.  Having disclosed the lawsuit prior to discharge in Bankruptcy, she
argues that the amendment was timely *enough,* and presents a "no harm, no foul" approach. She
argues that *Robinson* is distinguishable because the *Robinson* bankruptcy case was discharged
without the plaintiff ever notifying the court of the workers comp claim or the new lawsuit she
filed against her employer whereas Brothers has amended her bankruptcy petition to disclose this
suit before discharge.

   Brothers has indeed amended her Bankruptcy petition before discharge, but she did so
only after Bojangles filed the motion for summary judgment in the instant case, notifying the
court of Brothers's inconsistent positions and requesting that judicial estoppel be applied as a
bar.  But, Brothers amended her petition after official notification of the consequences of her
failure to do so.  She claims she did so upon realizing her obligation to do so.  A less favorable
spin would be that she amended only after being caught.

   The court will address this issue in more depth under the "Mockery of the Judicial
System" element.  However, the court notes at this point that when addressing amendments
disclosing civil claims as assets, a key focus of the Eleventh Circuit and district courts is upon
whether the plaintiff amends *prior* to the defendant's raising her failure to amend as a judicial
estoppel bar.  When the amendment only occurs after the defendant raises a judicial estoppel
argument, the Court of Appeals has applied the doctrine of judicial estoppel to bar the civil case
for monetary damages despite the amendment.   *See, e.g., Barger,* 348 F.3d at 1297 (affirming
the district court's grant of summary judgment on judicial estoppel grounds, and noting that
Barger "only sought to reopen the bankruptcy estate after the defendants moved the district court

10

to enter summary judgment against her on judicial estoppel grounds."); *De Leon,* 321 F.3d at 1292 (affirming the grant of summary judgment on judicial estoppel grounds even though the bankruptcy court had issued an order confirming the bankruptcy plan and the plaintiff had filed an amended petition to open the estate, noting that claimant's effort to "amend his bankruptcy filing [ ] only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only after he is caught concealing them."); *see also Hands,* 2010 WL 4496798 at *5-6 (holding that the plaintiff was judicially estopped from asserting race discrimination claims undisclosed in bankruptcy financial schedules even though the bankruptcy proceedings remained open and on-going).

The court finds that Brothers indeed did take inconsistent positions under oath, and that her amending the Bankruptcy schedules after the motion for summary judgment raising judicial estoppel does not rectify the inconsistency.

<u>Mockery of the Judicial System</u>

The second primary factor is whether the inconsistent position was designed to make a mockery of the judicial system. When addressing this element, the Eleventh Circuit requires "intentional contradictions, not simple error or inadvertence." *Burnes,* 291 F.3d at 1286.

In the instant case, Brothers insists that the contradictory positions she took – i.e., her failure to amend her Bankruptcy schedules – was inadvertent. But, the Eleventh Circuit has given the term "inadvertence" special meaning in this context, recognizing that debtors are likely to claim inadvertence and routinely assert a convenient ignorance of the duty to disclose. Indeed, if debtors could always successfully hide behind such a subjective assertion, unscrupulous debtors with both civil and bankruptcy suits pending might well make tactical decisions not to

disclose their civil claims and hope that a discharge occurs before the civil claims come to light, with no true penalty for their misconduct.

To avoid that result, the Eleventh Circuit has held that the debtor's failure to satisfy her statutory disclosure obligations is "inadvertent" in a judicial estoppel context "'only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" *Robinson,* 595 F.3d at 1275 (quoting *Barger,* 348 F.3d at 1295-96).

Brothers cannot claim ignorance of her undisclosed claims, i.e., the claims in this lawsuit. The EEOC charge filed in October of 2011 – during the pendency of her bankruptcy proceeding – contains the signature of Ginger Brothers, and she does not claim that the signature was forged or that her attorneys did not have permission to file this related lawsuit on her behalf in June of 2012.

Further, Brothers cannot deny that she had a motive for concealing these claims. Eleventh Circuit caselaw addressing the doctrine of judicial estoppel in this context repeatedly acknowledges that a debtor has a direct financial motive in concealing separate civil claims from the Bankruptcy Court proceedings. *See, e.g., Robinson,* 595 F.3d at 1275-76 (finding that the district court's reasoning was not clearly erroneous when it found the debtor had a motive to conceal "because if 'she realized any proceeds from the suit prior to the discharge of her bankruptcy ... she could have kept the proceeds for herself without their becoming part of the bankruptcy estate and going to her creditors to satisfy her debts.'"); *Barger,* 348 F.3d at 1296 ("Omitting the discrimination claims from the schedule of assets appeared to benefit her because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate."); *De Leon,* 321 F.3d at 1290-92 (finding that Chapter 13 debtor had a

12

motive to conceal "because the hiding of assets affects the amount to be discounted and repaid" and if the claim were omitted from the bankruptcy estate's assets, "his amount of repayment would be less. . .").

As is clear from this discussion, Brothers's nondisclosure of her civil claims was not "inadvertent," as the Eleventh Circuit has defined that term. Brothers's assertions that her nondisclosure was a "good faith mistake" mirror the same assertions made by debtors in numerous cases reflecting analogous circumstances in which the Eleventh Circuit applied the doctrine of judicial estoppel. This court FINDS that both of the identified primary factors supporting judicial estoppel exist in the instant lawsuit.

The court recognizes that the primary factors listed above are not the only ones that are appropriate for consideration. Eleventh Circuit decisions focus on these factors but also contemplate that the judicial estoppel inquiry be a flexible one. Accordingly, the court has reviewed the parties' briefs and filings for other considerations to address on this issue.

Brothers asserts that she "never tried to conceal her bankruptcy from Bojangles' as that her Bojangles' paycheck was garnished by the Bankruptcy Court while employed at Bojangles.'" (Pl.'s Opp. Br., doc. 32, at 2 ¶ 7). This argument is unavailing; the concealment at issue here is not concealment of the bankruptcy from her employer but, instead, is the concealment of her civil claims from the bankruptcy court, trustee, and creditors.

Brothers also asserts that amending the petition before discharge means that no harm has accrued and no reliance on her omission has occurred. She refers obliquely to the *Billups* and *Brooks* cases but does not provide the full names or any citation to those cases, so the court cannot address those references. If she refers to *Brooks v. Norfolk Southern Ry. Co.,* 52 So. 3d

13

484, 487 (Ala. 2010), a case that Defendant Bojangles cites, that decision is an Alabama case and is not controlling as to this court.  She also cites the case of *Nollie v. Wilson,* 781 So.2d 962 (Ala. Civ. App. 2000), which is a case decided by the Alabama Court of Civil Appeals, and is similarly not controlling authority.  In short, Brothers provides no controlling authority for her argument that as long as she amends before discharge, the application of the judicial estoppel doctrine is inappropriate.

In considering whether judicial estoppel applies, one of the appropriate considerations is indeed "whether the party successfully persuaded a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled."  *Ajaka v. Brooksamerica Mortg. Corp.,* 453 F.3d 1339, 1344 (11th Cir. 2006).  However, contrary to Brothers's argument, the point that a party misleads the court can certainly occur prior to final discharge.

For example, here, the Bankruptcy Court confirmed Brothers's plan in September of 2011.  Brothers filed her EEOC charge the next month, acknowledging in the charge that some of the alleged misconduct occurred during the summer months.  She filed the lawsuit eight months after plan confirmation.  During the two years between plan confirmation and the filing of the motion for summary judgment, the Bankruptcy Court, trustee and creditors remained in ignorance of her civil claims because she did not amend the Bankruptcy schedules.  If  Brothers prosecuted this civil case successfully, she could have retained the fruits of a verdict or settlement without paying her creditors from that fund.   The court finds no controlling authority supporting Brothers's argument that, because no final discharge has occurred, the Bankruptcy Court has not relied upon and accepted her previous position and she had not yet misled the

14

court.  In contrast, the Eleventh Circuit and district courts sitting in the Eleventh Circuit have applied the doctrine of judicial estoppel when the plaintiff failed to amend her bankruptcy proceeding to reflect the subsequently-filed civil suit, even when no final discharge in bankruptcy had yet occurred at the time of the judicial estoppel ruling.  *See, e.g., Robinson,* 595 F.3d at 1276-77; *Hands,* 2010 WL 4496798 at *4-6.

Finally, Brothers points to her prompt amendment of the Bankruptcy schedules *after* the filing of the motion for summary judgment, stating her obligation to do so and raising judicial estoppel.  However, prompt amending would be the natural reaction for any debtor notified of a failure to include assets whether that omission was "intentional" or "inadvertent"; debtors routinely promptly amend their Bankruptcy schedules when they are caught omitting assets and when faced with the consequences of judicial estoppel.  As discussed previously, the Eleventh Circuit has not accepted a debtor's stratagem of waiting for the opposing side to raise the doctrine of judicial estoppel and then amending Bankruptcy schedules as a proper means of rectifying the fault and avoiding the consequences of judicial estoppel.  *See, e.g., Barger,* 348 F.3d at 1297 (stating "Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like.  She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds.").

The court notes the extended line of Eleventh Circuit authorities endorsing the use of judicial estoppel in circumstances similar to those before this court.  Having reviewed those authorities and considered them in light of the circumstances in the case at bar, the court rejects Brothers's assertion of "inadvertence" and her suggestion that the court should overlook her

15

inconsistent positions because she reconciled them after she was caught.  Based on the evidence provided, the court, in its discretion, FINDS that Brothers took inconsistent positions under oath, that those inconsistent positions were designed to make a mockery of the judicial system, and that the facts and circumstances provided do not justify overlooking the misconduct.

## CONCLUSION

For all of these reasons, the court FINDS that the doctrine of judicial estoppel applies and precludes Brothers from pursing her monetary claims in the instant case against Bojangles in light of Brothers's nondisclosure of these claims in her Chapter 13 Bankruptcy proceedings for well over a year until Bojangles filed its motion for summary judgment.  Accordingly, the court further FINDS that Bojangles's motion for summary judgment is due to be GRANTED to this extent: summary judgment is due to be entered on Brothers's claims for monetary relief.  However, the court FINDS the motion is due to be DENIED to the extent that it requests the entry of summary judgment on Brothers's claims for injunctive, declaratory, or other non-monetary relief.  *See Barger,* 348 F.3d at 1297 (judicial estoppel principles do not bar plaintiff from pursuing claims for injunctive relief, such as requests for reinstatement, where such claims would have no value to the bankruptcy estate if the debtor had disclosed them).

The court will enter a simultaneous Order consistent with this Memorandum Opinion.

Dated this 21st day of November, 2013.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

16